UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------
CARL EVANS and REGINALD BENJAMIN,
Individually and on behalf of others
Similarly situated,

                              Plaintiffs,

            -v-

THE STATE OF NEW YORK, ANDREW CUOMO, Governor of State of
New York; NEW YORK EMPIRE STATE DEVELOPMENT CORPORATION,
HOWARD ZEMSKY, President and CEO of Empire State
Development Corporation; PORT AUTHORITY OF NEW YORK & NEW
JERSEY, PATRICK J. FOYE, Executive Director of Port
Authority of New York & New Jersey; DORMITORY AUTHORITY
Of the STATE OF NEW YORK, GERRARD P. BUSHELL, Executive
Director of the Dormitory Authority of the State of New
York; METROPOLITAN TRANSPORTATION AUTHORITY, THOMAS F.
PRENDERGAST, Chief Executive Officer of Metropolitan
Transportation Authority; NEW YORK CITY HOUSING
AUTHORITY, SHOLA OLATOYE, Chief Executive Officer of New
York City Housing Authority; NEW YORK CITY SCHOOL
CONSTRUCTION AUTHORITY, MELANIE LA ROCCA, Executive
Director of New York City School Construction Authority;
NEW YORK STATE DEPARTMENT OF TRANSPORTATION, MATTHEW J.
DRISCOLL, Commissioner of New York State Department of
Transportation; NEW YORK CITY DEPARTMENT OF
TRANSPORTATION, POLLY TROTTENBERG, Commissioner for New
York City Department of Transportation; UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY, GINA McCARTHY,
Administrator for United States Environmental Protection
Agency; UNITED STATES DEPARTMENT OF DEFENSE, ASHTON B.
CARTER, the Secretary of Defense; UNITED STATES ARMY
CORPS OF ENGINEERS, Lieutenant TODD T. SEMONITE,
Commanding General and Chief of Engineers for United
States Army Corps of Engineers; UNITED STATES DEPARTMENT
OF TRANSPORTATION, TODD LaHOOD, Secretary of United
States Department of Transportation; UNITED STATES
DEPARTMENT OF EDUCATION, JOHN B. KING, Secretary of
United States Department of Education; and UNITED STATES
DEPARTMENT OF HOUSING and URBAN DEVELOPMENT, JULIAN
CASTRO, Secretary of United States Department of Housing
and Urban Development, and JANE DOE and JOHN DOE as names
representing defendants whose names are not yet known,
                              Defendants.
----------------------------------------------------------

MOTION FOR JUDGMENT, or
in the alternative for a
PRELIMINARY INJUNCTION
and in
OPPOSITION TO MOTION
TO DISMISS
CV-15-03942

i

# Table of Contents

STATEMENT OF CASE                                                    1

STANDARD FOR RELIEF                                                  9

THE MERITS 10, PRIMA FACIA CASE 15, CONCLUSION 16

# Table of Authorities

**Cases**

Adams v Miami Police Benevolent Ass'n, 454 F.2d 1315. 1317 (5th
    Cir.), cert. denied, 409 U.S. 843 (1972) .................... 13

Alameda County v. Weinberger, 520 F.2d 344 (9th Cir. 1975).... 10

Associated General Contractors of Massachusetts, Inc. v.
    Altshuler, 361 F. Supp. 1293 (D. Mass. 1973), aff'd, F.2d (1st
    Cir. Nov. 30, 19731* (Executive Order 11246) ................ 14

Associated General Contractors of Massachusetts, Inc. v.
    Altshuler, 490 F.2d 9 (1973) ................................. 4

Baker v. City of St. Petersburg , 400F.2d 294 (5th Cir. 1968). 12

Bolling v. Sharpe, 347 U.S. #4497, 499....................... 12

Brunson v. Board of Trustees, 311 F.2d 107, 109 (4th Cir. 1962,
    cert. denied, 373 U.S. 933 (1963) .......................... 14

Burton v. Wilmington Parking Authority, 365 U.S.715, 81 S.Ct.
    856, 6 L.Ed.2d 45 (1961) .................................... 5

Cortwright v. Resor 325 F.Supp. 797, 808 (E.D.N.Y. 1971), rev'd
    on other grounds, 447 F.2d 245 (2d Cir 1971), cert. denied 405
    U.S.965 (1972) ............................................. 14

Cvpress v. Newport News General and Nonsectarian Hospital Assn,

375 F.2d 648~ 653 {4th Cir. 1967) ........................... 13

Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562............. 14

Escalara v. New York City Housing Authority, 425 F.2d 853, 867
   (2d 1970), cert. denied, 400 U.S. 853 (1970) ............... 14

Griggs v. Duke Power co., 401 U.S. 424, 430, 91 S.Ct. 849, 853,
   28 L.Ed.2d 158 (1971) ...................................... 14

Hamilton Watch Co. v. Benrus Watch Co., 206 F. 2d 738, 740(2nd
   Cir. 1953) ................................................. 9

Jones v. Lee Way Motor Freight, Inc, 431 F.2d 245 , 247 (lOth
   Cir. 1970), cert. denied, 401 U.S. him 954 .(971); United
   States v . Local 86, Ironworkers, 443 F.2d 544 (9th Cir .
   1971), cert. denied, 404 U. S. 984 (1971) ................. 12

Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920, 931-
   932 (2d Cir. 1969) ......................................... 15

Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920, 937
   (1968) .................................................... 14

Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190
   (2d Cir. 1971) ............................................ 10

Percy v. Brennan No. 73 Civ. 4279............................ 1

Rios v. Enterprise Ass'n Steamfitters Local 633 of UA . 54 FRD
   234, 237 (SD.NY (1971) .................................... 13

Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir.
   1970) ..................................................... 10

Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161
   (1948) .................................................... 5

Strain v. Philoott, 331 F.Supp.836 (D.C. Ala. 1971).......... 12

Strauder v. State of West Virginia, 100 U.S. 303, 307—308, 25

L.Ed. 664 (1880); Ex parte Virginia, 100 U.S. 339, 344—345, 26 L.Ed. 676 (1880) ........................................... 5

Turner v. City of Memphis ,369 U.S . 350 (1962).............. 12

United States v. Hayes International Corporation, 415 F.2d 1038, 1045 ...................................................... 11

United States v. School District 151 of Cook Co.r 301 F.Supp. 201 (D.C . Ill. 1969) , modified on other grounds, 432 F.2d 1147 (7th Cir. 1970), cert. denied,402 U.S. 943 (1971) ...... 12

United States v. Wood, Wire and Metal Lathers International Union, Local 46, supra, and cases cited therein 471 F.2d at p. 413 ...................................................... 2

United States v. Wood, Wire and Metal Lathers International Union, Local 46, supra, and cases cited therein 471 F.2d at p. 413...................................................... 2

**Statutes**

29 U.S.C. § 1001 et seq........................................ 8

42 U.S.C. § 2000e-5(g)......................................... 3

42 U.S.C. § 2000e-6(a)......................................... 3

42 U.S.C. §§§ 1981, 1983, 1985................................. 3

42 U.S.C. §§2000e et al (commonly referred to as PL Title VII of the Civil Rights Act of 1964) ............................. 11

Fitzgerald Act (29 U.S.C. § 50 commonly known as the National Apprenticeship Act of 1937, section 1 (29 U.S.C. 50) ...... 5, 8

New York Insurance Law §2504................................... 6

United States v. Wood, Wire and Metal Lathers International Union, Local 46, 471 F.2d 408, 412-413 (2d Cir.), cert. denied, 412 U.S. 939, 93 S.Ct. 2773, 37 .l.Ed.2d 398 (1973) .......... 3

**Other Authorities**

New York Labor Law Article 23 Apprenticeship Training and Labor
  Law §811, NYCRR Part 600 Equal Employment Opportunity in
  Apprenticeship Training and Part 601 Registration of
  Apprenticeship Programs and Agreements ....................... 6

**Regulations**

NYCRR Part 600 Equal Employment Opportunity in Apprenticeship
  Training and Part 601 Registration of Apprenticeship Programs
  and Agreements .............................................. 6

## STATEMENT OF CASE

The rule is that the complaining party must have standing to proceed with its class action. This was found by Judge Lasker in a Memorandum on November 8, 1974 in Percy v. Brennan No. 73 Civ. 4279 litigation, attached as Exhibit 1 to the Kernan Affirmation in support. The class was defined by Judge Lasker as "all black and Spanish-surnamed persons who are capable of performing, or capable of learning to perform, construction work, and who wish to perform construction work within the jurisdiction of unions that are members of the defendant Building and Construction Trades Council of Greater New York", and that is Benjamin. The standing was certified in a lawsuit seeking training to develop skills for equal employment opportunity, the same class and the same relief continues to be prayed for by Benjamin in the plenary action herein.

Since standing of this class has already been determined and the issues raised in the complaint have not been otherwise controverted, judgment in favor of the Plaintiff is warranted. Reginald Benjamin and Carl Evans have undertaken the role as class representative of the certified class replacing Albert E. Percy a Trinidad born black man, Manuel E. Mejia a Spanish surname man who is now deceased, and John Mercado also a man with Spanish surname, the class representatives when Judge

Lasker in Percy v. Brennan No. 73 Civ. 4279 found standing and certified the very same class as asserted herein. The complaining party Benjamin (hereinafter the "Complaining Party") is a member of the class and a proper class representative to take over the duties of his predecessors.

The Complaining Party seeks a preliminary injunction against defendant Government Agencies and Authorities, referred to as "respondents" to whom an "alternative employment practice" was demonstrated but refused becoming the predicate for this plenary action under 42 U.S.C. § 2000e-2(k)(1)(A)(ii), to preserve the Complaining Party's rights to equal employment opportunity on publicly funded project sites and facilities in and about the City of New York, during the pendency of this litigation.

Violation of Title VII of the Civil Rights Act of 1964 ("Act") and specifically 42 U.S.C. § 2000e-2(k), as hereinafter described, empowers the district court with broad power as a court of equity to remedy the vestiges of past discriminatory practices. See United States v. Wood, Wire and Metal Lathers International Union, Local 46, supra, and cases cited therein 471 F.2d at p. 413. Under the Act the courts have been vested with broad power to grant affirmative relief to combat the invidious and often subtle practices of discrimination. The Act empowers the attorney general, with reasonable cause to believe

2

that a person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any rights secured by Title VII, to request "such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice as he deems necessary to insure the full enjoyment of the rights [under Title VII] . . . ." 42 U.S.C. § 2000e-6(a), and we make that application on behalf of the class here.

The only limitation on the broad powers of affirmative relief is that restricting preferential quota hiring. United States v. Wood, Wire and Metal Lathers International Union, Local 46, 471 F.2d 408, 412-413 (2d Cir.), cert. denied, 412 U.S. 939, 93 S.Ct. 2773, 37 .l.Ed.2d 398 (1973), but also to order 'affirmative action' which may include such 'equitable relief as the court deems appropriate,' 42 U.S.C. § 2000e-5(g).

The Complaining Party has brought this class action seeking redress for the deprivation of rights secured by the 5th and 14th Amendments to the United States Constitution, 42 U.S.C. §§§ 1981, 1983, 1985,and United States Executive Order 11246. The Complaining Party seeks declaratory and injunctive relief in this action to prevent respondents, officials of the United States of America and New York State and local officials of agencies and authorities, from ignoring the Complaining Party's

rights to paid on-the-job training ("OJT") and employment in connection with public works construction contracts in such a way that it deprives the Complaining Party of their right to become skilled so as to be able to compete fairly for jobs based on ability rather than skin color or ethnicity.

Equal employment opportunity is an obligation accepted by the Respondents when they accepted grants of federal funds. The Respondents are not relieved from their obligations under the Act by passing the burden through to contractors.

The most beneficial and constitutionally correct solution, (the "alternative employment practice") that is certainly less onerous, to address and correct the inequity and foster equal employment then so-called affirmative action, is for the respondents to provide paid OJT and continuing education to persons from low income and impoverished communities within commuting proximity to Respondent's projects and facilities as identified by the statistical analysis of Eric Cordora in support of the relief prayed for herein.

Equal opportunity at its core carries the simple mandate that opportunities should be open to all on the basis of competence alone, Associated General Contractors of Massachusetts, Inc. v. Altshuler, 490 F.2d 9 (1973). The clear and central purpose of the 14th Amendment was to eliminate all official state sources of invidious racial discrimination in the

States. Slaughter-House Cases, 16 Wall. 36, 71, 21 L.Ed. 394 (1873); Strauder v. State of West Virginia, 100 U.S. 303, 307—308, 25 L.Ed. 664 (1880); Ex parte Virginia, 100 U.S. 339, 344—345, 26 L.Ed. 676 (1880);Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); Burton v. Wilmington Parking Authority, 365 U.S.715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

The problem is that local hiring without more is in-effective and will fail because local residents lack the minimum training and preparation needed to be eligible for the jobs that become available, and those who do secure construction work as a result of hiring goals are often unable to keep their jobs.

As part of the "alternative employment practice", communities comprising the local impact area will be elicited to recruit local residents and refer them to the respondents sponsored apprenticeship programs or on-the-job employment positions for which they are qualified or qualifiable.

The "alternative employment practice" demonstrated to the respondents and as set forth in the Evans Affidavit, answers the need for the Complaining Party to obtain competitive skills by utilizing registered apprenticeship training meeting the requirements of the Fitzgerald Act (29 U.S.C. § 50 commonly known as the National Apprenticeship Act of 1937, section 1 (29 U.S.C. 50) under U.S. Department of Labor's Bureau of Apprenticeship and Training (BAT) and C.F.R. T. 29, Subt. A, Pt.

29 and Pt. 30, New York Labor Law Article 23 Apprenticeship Training and Labor Law §811, NYCRR Part 600 Equal Employment Opportunity in Apprenticeship Training and Part 601 Registration of Apprenticeship Programs and Agreements.  Apprenticeship is the process of learning a skilled occupation through both on-the-job training (practical, paid experience) and learning the related technical knowledge in a classroom. Candidates must be 18 years old, and possess a GED (the Solution will help a candidate obtain a GED). Enrollment must be done openly under the procedures established by federal and state regulations for Minimum Qualifications Review, Eligibility List Ranking using Form AT507 and AT508 for: educational achievement, work experience, seniority, job aptitude, oral interview, and demographics determine a score for ranking for eligibility to be enrolled in OJT and continuing education.

The "alternative employment practice" is part of wrap-up workers compensation insurance which will develop the skills of the class of persons recruited from within communities mired in poverty to be able to compete for paid OJT with related classroom instruction and continuing education provided as part of risk management, loss control and safety training within Owner Sponsored Insurance Programs for workers compensation insurance which is provided by Respondents under New York Insurance Law §2504 wrap-up insurance as a mandated coverage

provided by the Respondents for which the contractors take credit against their individual workers compensation policies so there is no extra cost to the contractor.

The apprenticeship program portion of the solution is the process of learning a skilled occupation through both on-the-job training (practical, paid experience and learning the related technical knowledge in a classroom. Eligibility List Ranking using Form AT507 and AT508 for: educational achievement, work experience, seniority, job aptitude, oral interview, and demographics to determine a score for ranking for eligibility to be enrolled in OJT and continuing education was presented.

The "alternative employment practice" is ideally suited to train and create jobs for the class of disadvantaged persons. The Apprentice Program as the "alternative employment practice" is an outgrowth of a commitment to minimize loss and risk in the work place by educating and training apprentices and journey persons on safe and healthful practices, worker's safety is impacted in a positive manner resulting in greater control of risk reducing loss for employers and their carriers.

An acceptable apprenticeship program is vigorous and comprehensive and takes many years for an apprentice to fulfill the requirements as established by the US Bureau of Apprenticeship Training and the New York State Department of Labor by means of approved work processes as Appendix A On-the-

job training and Appendix B related classroom instruction.

On many facilities and projects of respondents wrap-up workers' compensation insurance is a part of the respondents' contracts and would be an ideal mechanism within which to fit OJT apprentice training as to foster equal employment opportunity with outreach by sponsors. The respondents have been reticent to establish a solution such as this which actually provides jobs and careers to the Complaining Party.

The respondents have simply passed the obligations through to contractors with goals and quotas in violation of United States Executive Order 11246, as well as several other federal regulations specifically identified in the grants of Federal Funding, causing and continuing to cause disparate impact discrimination that these statutes, orders, and regulations were designed to remedy, when the Respondent's easily could have sponsored apprenticeship under the Fitzgerald Act (29 U.S.C. § 50 commonly known as the National Apprenticeship Act of 1937, section 1 (29 U.S.C. 50) under U.S. Department of Labor's Bureau of Apprenticeship and Training (BAT) and C.F.R. T. 29, Subt. A, Pt. 29 and Pt. 30, which is preempted for federal jurisdiction under the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.).

The federal courts have adopted the general principle that they will grant a motion for preliminary injunction when (1) the plaintiffs have raised serious and substantial questions on the merits and (2) the injury the plaintiffs will suffer without preliminary relief is irreparable and outweighs the resulting harm to the defendants, Hamilton Watch Co. v. Benrus Watch Co., 206 F. 2d 738, 740(2nd Cir. 1953); 7 Moore's Federal Practice ['65 . 04]; Wright and Miller, Federal Practice and Procedure 1f,f2947 et seq. the Complaining Party is now entitled to the relief envisioned by Judge Lasker, wholly without doubt; and in balance of hardships tips decidedly toward the Complaining Party). For a preliminary injunction characterized by its for-the-time-beingness" serves as an equitable policing measure to prevent the parties from harming one another during the litigation.

An additional factor that enters into the preliminary injunction calculus is the likelihood that plaintiff will prevail on the merits.

To obtain a preliminary injunction, it is not necessary that the plaintiff's right to a final decision, after trial, be absolutely certain or wholly without doubt; if other elements required for the grant of temporary relief are present, it will ordinarily be enough that plaintiff has raised questions going

to the merits which are so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation. Alameda County v. Weinberger, 520 F.2d 344 (9th Cir. 1975), Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190 (2d Cir. 1971), Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. 1970).

## THE MERITS

Plaintiffs seek redress for denial of employment opportunities on grounds that it is denied equal opportunity for training on-the-job to gain skills to compete.

Plaintiff Benjamin is an unemployed black construction worker who has had training and experience as a carpenter and is competent to perform or learn to perform skilled construction work as a journeyman worker, fully competent to perform skilled construction work, is able-bodied, see the Amended Complaint in this matter and the affidavit on the Reginald Benjamin in support of this motion for a preliminary injunction.

Plaintiff Benjamin has repeatedly and unsuccessfully sought employment in the skilled construction trades. He has been waiting for placement for years. Plaintiff Reginald Benjamin is an unemployed black construction worker. On the basis of his training, he is either capable of performing work as a carpenter or of learning in a short period of time whatever additional

skills may be necessary to work.

He has sought such employment through Able Bodied Believers Alliance ("ABBA") him, an organization that specializes in placing unskilled workers from low income communities in skilled construction work. He has sought training, but has been unable to obtain such training because there are insufficient training opportunities available on public construction sites. Plaintiff Benjamin is an intelligent able-bodied person living in an impoverished community surrounding the facilities and projects, he is capable of learning given reasonable training.

Irreparable injury is presumed when employment discrimination is present. United States v. Hayes International Corporation, 415 F.2d 1038, 1045. Here plaintiffs will prevail in showing employment discrimination by statistics as alleged in the complaint and as provided to the court and the affidavit of Eric Cordora.

When a clearly stated Congressional policy is ignored, irreparable injury necessarily ensues for the beneficiaries of the policy. In fact, every citizen of the United States suffers irreparable injury when a policy that, in Congressional judgment. Executive Order 11246 and statutes including 42 U.S.C. §§2000e et al (commonly referred to as PL Title VII of the Civil Rights Act of 1964).

Statistics alone create a prima facie case of unlawful

employment discrimination, Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245 , 247 (10th Cir. 1970), cert. denied, 401 U.S. him 954 .(971); United States v . Local 86, Ironworkers, 443 F.2d 544 (9th Cir . 1971), cert. denied, 404 U. S. 984 (1971). State officials are, obviously, prohibited by the 14th Amendment from racial discrimination in discharging their official duties. Turner v. City of Memphis, 369 U.S. 350 (1962); United States v. School District 151 of Cook Co.r 301 F.Supp. 201 (D.C. Ill. 1969) , modified on other grounds, 432 F.2d 1147 (7th Cir. 1970), cert. denied,402 U.S. 943 (1971); Baker v. City of St. Petersburg , 400F.2d 294 (5th Cir. 1968); Strain v. Philoott, 331 F.Supp.836 (D.C. Ala. 1971). Federal officials and agencies are under a duty, under the Fifth Amendment, no less stringent than that imposed on. state officials, not to engage in discrimination on the basis of race. See, Bolling v. Sharpe, 347 U.S. #4497, 499 (1954i. Even dispassionate acquiescence in the pattern of discrimination behavior in the New York City construction industry would be forbidden under the Constitutional principles.

If permitted and allowed to continue or take place unabated, will cause immediate and irreparable injury, loss and harm to the various recruits of ABBA, and the class at large.

23(a) and 23(b)(2) of the Federal Rules of Civil Procedure require the class be defined. Here the class represented by the

Plaintiff Benjamin includes persons in impoverished communities that surround the multibillion-dollar public work projects, who coincidentally primarily are black and Spanish surname persons who are capable of performing, or capable of learning to perform, construction work and who wish to perform construction work within the jurisdiction.

There is a great likelihood that there are many individuals from low income communitie him him s who have been deterred from even applying for jobs in the construction industry in the New York City area by the reputation th him him at the industry has toward the minority community for being discriminatory. Such persons who have been deterred from applying for employment may properly be included in the class represented by plaintiff Benjamin, Cypress v. Newport News General and Nonsectarian Hospital Assn, 375 F.2d 648~ 653 {4th Cir. 1967). The class may also include persons who may in the future be denied employment, Adams v Miami Police Benevolent Ass'n, 454 F.2d 1315. 1317 (5th Cir.), cert. denied, 409 U.S. 843 (1972); Rios v. Enterprise Ass'n Steamfitters Local 633 of UA. 54 FRD 234, 237 (SD.NY (1971). The class in the case now before this court is, therefore, large and joinder of all its members would be impracticable. Any employment policy which operates to limit the number of minority individuals to be employed in a particular industry necessarily involves common questions of law or fact.

Whatever factual disparities, if any, may exist among the members of the class are superseded by the common issues they share, Cortwright v. Resor 325 F.Supp. 797, 808 (E.D.N.Y. 1971), rev'd on other grounds, 447 F.2d 245 (2d Cir 1971), cert. denied 405 U.S.965 (1972); Escalara v. New York City Housing Authority, 425 F.2d 853, 867 (2d 1970), cert. denied, 400 U.S. 853 (1970), Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920, 937 (1968); Brunson v. Board of Trustees, 311 F.2d 107, 109 (4th Cir. 1962, cert. denied, 373 U.S. 933 (1963)

Plaintiff Benjamin's challenges to the defendants' discriminatory policies and actions present no possibility of conflict between plaintiffs' interests and those of the members of the class. The elements of fair and adequate representation are, therefore satisfied. See generally 3B Moore, Federal Practice, ¶23.07(1) (2d Ed. 1969); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562.

Here, irreparable injury results from the denial of employment opportunities. Success on the merits is inevitable. Griggs v. Duke Power co., 401 U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971), Associated General Contractors of Massachusetts, Inc. v. Altshuler, 361 F. Supp. 1293 (D. Mass. 1973), aff'd, F.2d (1st Cir. Nov. 30, 19731* (Executive Order 11246).

This action does not challenge percentage goals or other

tools instituted by Government Agencies even though racial classifications may b him e inherently divisive, reinforcing prejudices, confirming perceived differences between the races, and weakening the government's educative role on behalf of equality and neutrality, Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920, 931-932 (2d Cir. 1969).

A determination by this Court that a hiring plan which reaches out into impoverished communities surrounding federally funded facilities and projects must be the temporary solution enforced with a preliminary injunction covering the New York City area, Immediately including in affirmative action hiring program in its federally assisted contracts where many billions of dollars of construction work is underway or about to get underway.

## PRIMA FACIA CASE

The Affidavit of Eric Cadora establishes by statistics the prima facie case, even though the case has already been established long ago in Percy v. Brennan. Respondent refused the "alternative employment practice" as referenced in the Evans affidavit, establishing the grounds for this litigation under 42 U.S.C. § 2000e-2(k)(1)(A)(ii).

The respondents here were not named in the Brennan case, but they in fact are the only parties in a position to provide real affirmative action. The "alternative employment practice"

including the use of Project Labor Agreements and can be funded by private money generated from wrap-up risk management, loss control and safety training, reducing the cost of workers compensation losses, which savings can more than fund, the "alternative employment practice" not costing respondents or diverting any of the funding for its projects, simply reallocating funding by reducing losses and allocating the savings to training.

## CONCLUSION

And yes, fifty years have passed since Pres. Lyndon Johnson declared that equality has to be actual equality, not equality in name, when he said "You do not take a man who, for years, has been hobbled by chains, liberate him, bring him to the starting line of a race, saying you are free to compete with all the others, and still justly believe you have been completely fair."[1]

WHEREFORE, Plaintiffs request that this court grant the following relief:

A. Grant a preliminary order mandating that Defendant respondents adopt the "alternative employment practice" demonstrated by the Complaining Party, using its equitable powers to fashion this alternative employment practice which truly provides affirmative action to the class which has been

---

[1] Howard University speech by Lyndon Johnson on affirmative action, 1965, shortly after his Executive Order 11246.

denied Plaintiffs' rights to equal opportunity for employment and enjoin the Defendants and each of them from further violation of such rights, and

B.   For an Order under FRCP 12(b)(6) dismissing the affirmative defense raised by the Port Authority Defendants that Plaintiffs lack standing, based upon a preceding action entitled Percy v. Brennan No. 73 Civ. 4279, and to enter judgment in this matter in favor of Plaintiffs for the relief requested on their motion, and

C. for such other and further relief which may be just and proper.

DATED: at New York, New York on this 15th day of February, 2017.

KERNAN PROFESSIONAL GROUP, LLP

By:  s/James M. Kernan
James M. Kernan, Esq.
Bar Roll No. JK1242
Office and Post Office Address
26 Broadway, 19th Floor
New York, New York 10004
Telephone:  (212)986-3196
Facsimile:  (212)656-1213
jkernan@kernanllp.com