UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

CARL EVANS and REGINALD BENJAMIN,
*individually and on behalf of all others similarly situated*,

                                 Plaintiffs,

                                     v.

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PATRICK J. FOYE, Executive Director of The Port Authority of New York and New Jersey, STATE OF NEW YORK, ANDREW CUOMO, Governor of New York, NEW YORK EMPIRE STATE DEVELOPMENT CORPORATION, HOWARD ZEMSKY, President and Chief Executive Officer of Empire State Development Corporation, DORMITORY AUTHORITY OF THE STATE OF NEW YORK, GERRARD P. BUSHELL, Executive Director of the Dormitory Authority of the State of New York, METROPOLITAN TRANSIT AUTHORITY, THOMAS F. PENDERGAST, Chief Executive Officer of Empire State Development Corporation, NEW YORK CITY HOUSING AUTHORITY, SHOLA OLATOYE, Chief Executive Officer of New York City Housing Authority, NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY, Melanie La Rocca, NEW YORK STATE DEPARTMENT OF TRANSPORTATION, MATTHEW J. DRISCOLL, Commissioner of New York State Department of Transportation, NEW YORK CITY DEPARTMENT OF TRANSPORTATION, POLLY TROTTENBERG, Commissioner for New York City Department of Transportation, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, GINA MCCARTHY, Administrator for United States Environmental Protection Agency, UNITED STATES DEPARTMENT OF DEFENSE, ASHTON B. CARTER, the Secretary of Defense, UNITED STATES ARMY CORPS OF ENGINEERS, LIEUTENANT TODD T.

**MEMORANDUM & ORDER**
15-CV-3942 (MKB)

SEMONITE, Commanding General and Chief of Engineers for United States Army Corps of Engineers, UNITED STATES DEPARTMENT OF TRANSPORTATION, TODD LAHOOD, Secretary of Transportation, UNITED STATES DEPARTMENT OF EDUCATION, JOHN B. KING, Secretary of Education, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, JULIAN CASTRO, Secretary of Housing and Urban Development and JOHN and JANE DOES, *as names representing defendants whose names are not yet known*,

Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiffs Carl Evans and Reginald Benjamin commenced the above-captioned action on behalf of a class of similarly situated individuals on July 7, 2015, alleging that Defendants have denied Plaintiffs their rights to "paid on-the-job apprentice training and employment in connection with public works construction contracts" and thereby deprived Plaintiffs of the opportunity to "compete fairly for jobs based on ability," rather than on their status as racial and ethnic minorities. (Compl. ¶ 1, Docket Entry No. 1.) Plaintiffs filed an Amended Complaint on December 15, 2016, asserting claims for disparate-impact discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, discrimination under 42 U.S.C. §§ 1981, 1983 and 1985, violation of Executive Order 11246 ("EO 11246") and breach of various federal grants requiring equal employment opportunity. (Am. Compl. ¶¶ 63–75, Docket Entry No. 35.)

Defendant Port Authority of New York and New Jersey[1] (the "Port Authority") moves to dismiss the Amended Complaint for lack of standing and for failure to state a claim pursuant to

---

[1] Plaintiffs served the non-Port Authority Defendants on April 12 and 13, 2017, and between May 1 and 9, 2017, Magistrate Judge Steven Gold granted the non-Port Authority

Rules 12(b)(1)[2] and 12(b)(6), respectively, of the Federal Rules of Civil Procedure. (Def. Mot. to Dismiss ("Def. Mot."), Docket Entry No. 56; Def. Mem. in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 57; Def. Reply in Further Supp. of Def. Mot. ("Def. Reply"), Docket Entry No. 58.) Plaintiffs oppose the motion and cross-moves for a preliminary injunction "mandating that [Defendants] adopt the Alternative Employment Practice demonstrated by [Plaintiffs]" and enjoining Defendants from "violating Plaintiffs' rights to equal opportunity for employment." (Pls. Opp'n & Cross-Mot. for Prelim. Inj. ("Pls. Opp'n") 18, Docket Entry No. 46.)

For the reasons discussed below, the Court grants the Port Authority's motion to dismiss for lack of standing and denies Plaintiffs' cross-motion for a preliminary injunction.

**I. Background**

Plaintiffs represent a putative class of "disadvantaged low income or nonexistent income individuals who are fully and capable [sic] of learning and to perform and/or performing skilled trade work as apprentices and journeypersons in a class, but have been denied such opportunities because such employment opportunities have been exported to other high income individuals from outside of the New York City area because of the lack of experience of the [c]lass" (the "Class"). (Am. Compl. ¶ 5.) Plaintiff Benjamin "runs" the Able Body of Believers Alliance

---

Defendants ninety days from the Court's decision on this motion to answer the Amended Complaint. (*See* Summons Returned Executed, Docket Entry Nos. 66, 74; Order dated May 1, 2017; Order dated May 5, 2017; Order dated May 9, 2017.) Should Plaintiffs choose to amend the Amended Complaint in accordance with this Memorandum and Order, Defendants shall answer within ninety days of the filing of the second amended complaint.

[2] Although the Port Authority does not expressly move to dismiss under Rule 12(b)(1), it moves to dismiss for lack of standing, and the Court therefore construes its motion as one pursuant to Rule 12(b)(1) in addition to Rule 12(b)(6). *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88–89 n.6 (2d Cir. 2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), the proper procedural route is a motion under Rule 12(b)(1)." (internal citations omitted)).

("ABBA") Leadership Center, a not-for-profit organization that organizes on-the-job training and provides group support for disadvantaged men and women who seek help with effective reentry into society after incarceration. (*Id.* ¶¶ 6–7.) Plaintiff Evans "was able to lift himself to become [part of] the skilled construction trades" and "is now able to attempt to rectify the plight of the Class." (*Id.* ¶ 10.) Plaintiffs generally seek apprenticeships and/or on-the-job training for the Class, and allege that Defendants' organizations have received federal grants but have failed to use those grants to improve the employment opportunities of the putative class. (*Id.* ¶ 12.)

Plaintiffs allege that Defendants use quotas to achieve federal mandates of equal employment for racial minorities, "apparently due to the mistaken view by Defendants that there is no less onerous alternative" to achieve equal employment, which allows "unequal treatment based upon the color of skin or ethnicity under the guise of equalizing employment opportunity, when in fact there is a more beneficial and constitutional solution available." (*Id.* ¶ 18.) Plaintiffs allege that Defendants "have conspired, shifted and passed the burden to comply" with federal mandates "to the contractors building facilities by requiring goals [such] as affirmative action, but that has simply spawned fraud and criminal activity." (*Id.* ¶ 20.)

Plaintiffs suggest a more "constitutionally correct solution" that they call "the Solution," which Plaintiffs allege is "a less onerous alternative to address and correct the inequity and foster equal employment." (*Id.* ¶ 22.) The Solution is a proposed apprenticeship program that provides its members with on-the-job, paid skills training coupled with related classroom instruction on the technical aspects of their jobs. (*Id.* ¶¶ 23–24.) As Plaintiffs describe it, "[t]he Solution is part of wrap-up workers compensation insurance which will develop the skills of the Class of persons recruited from within communities mired in poverty to be able to compete for paid [on-the-job training]" at no extra cost to contractor-employers. (*Id.* ¶ 24.) As relevant to the Port

4

Authority, Plaintiffs presented the Solution to "Lash Green, Diversity Officer of the Port Authority" and to "past Executive Director Chris Ward," proposing that the Port Authority adopt and sponsor the Solution, "but the Port Authority has remained apathetic to the plight of the Class." (*Id.* ¶ 28.)

Plaintiffs allege that Defendants "have spent over [fifty] years attempting to enforce goals and quotas which have miserably failed, and well they should fail because [they] flow from a forced interpretation of the vision of the [the Civil Rights] Act and the [Fourteenth]Amendment to the U.S. Constitution." (*Id.* ¶ 39.) According to Plaintiffs, as part of Defendants' attempts to "enforce goals and quotas," Defendants have applied for and received federal grants that require them to certify that they will "employ [the] funds to accomplish equal employment opportunity for the economic benefit of the Class," but, as a result of Defendants' failure to comply with the terms of those grants, "the employment rate of the Class is still significantly lower than that of other demographic groups." (*Id.* ¶ 46.) Plaintiffs state that while "in 1969, the employment rates for men between the ages of [twenty] and [twenty-four] were about [seventy-seven] percent for blacks and [seventy-nine] percent for whites," by 2012 "the employment rate for young men in the Class dropped to less than [fifity] percent, while young white men were about [eighteen] percentage points higher at almost [sixty-eight] percent." (*Id.* ¶ 47.)

In sum, Plaintiffs allege that Defendants received grants that required them to provide specific assurances that they would comply with the Civil Rights Act of 1964 and with EO 11246. (*Id.* ¶ 52.) Defendants instead "failed to provide a mechanism which enables disenfranchised persons to gain experience on-the-job and join the gainfully employed workforce," which "deprived [the Class] of the opportunity to obtain employment under the

5

facilities and projects which receive[d] federal funding."[3] (*Id.* ¶¶ 53–54.) Plaintiffs seek a declaratory judgment "declaring that the acts of the [D]efendants [are] in violation of the Plaintiffs' rights to equal employment," a writ of mandamus "enjoining Defendants to provide an accounting of their acts," and an order "enjoining any further payment of Federal Funds under grants to Defendants until Defendants have implemented corrective policies . . . as asserted in this complaint." (*Id.* ¶¶ 40–41, Prayer for Relief.) Plaintiffs do not seek damages.

## II. Discussion

### a. Standards of review

#### i. Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)); *see also Chau v. S.E.C.*, 665 F. App'x 67, 70 (2d Cir. 2016). The plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether the plaintiff has met that burden, "'[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of

---

[3] Plaintiffs annex to the Amended Complaint several exhibits that display New York City census tracts overlaid on the public works projects that Defendants have overseen — namely, LaGuardia Airport, John F. Kennedy International Airport, Newark–Liberty International Airport and the World Trade Center PATH Station. (*See* Exs. 1–9, annexed to Am. Compl.) These maps display, among other things, areas of greater-than-average unemployment, areas in which a majority of families are Black or Hispanic and earn less than $40,000 per year, and areas in which the Class population is greater than fifty percent of the general population, and overlay these tracts in proximity to the public works projects that received federal funding. (*See* Exs. 1, 3, 4.)

plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010). A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

### ii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Concord Assocs., L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### b. Plaintiffs lack standing to pursue their claims

The Port Authority argues that the named Plaintiffs and the putative class lack standing because they have not suffered any injury as a result of the Port Authority's alleged failure to provide on-the-job training but instead assert a "generalized grievance" too attenuated from the Port Authority's alleged misconduct to support standing.[4] (Def. Mem. 14–18.) Plaintiffs do not address the standing argument except by reference to a district court decision, *Percy v. Brennan*, 384 F. Supp. 800, 808 (S.D.N.Y. 1974), which Plaintiffs argue found that a similar class of plaintiffs had standing to challenge the New York Plan of 1970.[5] (Pls. Opp'n 18.)

In order to show standing, a plaintiff must establish three things: (1) an "injury in fact — an invasion of a legally protected interest which is . . . concrete and particularized and actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of," and (3) redressability of the injury "by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see Pincus v. Nat'l R.R. Passenger Corp.*, 581 F. App'x 88, 89 (2d Cir. 2014) (describing the three elements of standing (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("[A] plaintiff must show the three familiar elements of standing: injury in fact,

---

[4] In addition, the Port Authority argues that Plaintiffs lack standing to bring a breach of contract claim because they are neither party to nor intended thirty-party beneficiaries of the grant agreements. (Def. Mem. 19.)

[5] The New York Plan "was established in 1970 to comply with Executive Order No. 11246, which imposed broad equal employment obligations on federal and federally-assisted contractors." *Percy v. Brennan*, 384 F. Supp. 800, 804 (S.D.N.Y. 1974). The New York Plan established "yearly minority employment goals on a trade-by-trade basis" with "increasing minority participation each year." *Id.* Individual contractors and unions formulated a training program for voluntary compliance with the New York Plan, which allowed for 800 "trainees" who, upon graduating from the training program established by the New York Plan, would be "recommended to the appropriate union 'for consideration for membership.'" *Id.* at 805.

causation, and redressability." (citing *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009))). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citations and internal quotation marks omitted).

"[T]o meet the constitutional minimum of standing" for injunctive relief, a plaintiff "must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *Lyons*, 461 U.S. at 101–102); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." (first citing *Lyons*, 461 U.S. at 111–12; and then citing *Shain*, 356 F.3d at 215–16)); *Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) ("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm."). The alleged injury "must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. ---, ---, 134 S. Ct. 2334, 2341 (June 16, 2014)); *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) ("The Supreme Court has 'repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are not sufficient.'" (alteration in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013))).

A plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." *Shain*, 356 F.3d at 215; *see also Nicosia*, 834 F.3d at 239 (stating that past injuries do not confer standing to seek injunctive relief); *Pungitore*,

506 F. App'x at 42 (stating that, while past wrongs may be "evidence bearing on whether there is a real and immediate threat of repeated injury,' such evidence 'does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects'" (quoting *Lyons,* 461 U.S. at 102)). "In establishing a certainly impending future injury, . . . the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (collecting cases). "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003) (citing *Lujan*, 504 U.S. at 561).

However, "[i]t is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *Steinberger v. Lefkowitz*, 634 F. App'x 10, 11 (2d Cir. 2015) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). A plaintiff thus bears the burden "clearly to allege facts [in his complaint] demonstrating that he is the proper party to invoke judicial resolution of the dispute." *Id.* (alterations in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)); *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997) (noting that the standing inquiry "focuses on whether the plaintiff is the proper party to bring suit"). Each of the named plaintiffs "must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth*, 422 U.S. at 502. "If the plaintiff fails to make the necessary allegations, he has no standing." *Steinberger*, 634 F. App'x at 11 (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273 (2d Cir. 1994)).

Here, Plaintiffs have not pled facts sufficient to show that they have "a personal stake in

the controversy," that they have been injured "in a personal and individual way" by the Port Authority, or that their participation in the suit is not merely "for the ventilation of public grievances" that are, admittedly, compelling. *See Baur*, 352 F.3d at 632; *see also Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1106 (2d Cir. 1992) ("[C]ourts generally should refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances . . . ." (internal quotation marks omitted)).

First, neither named Plaintiff alleges that he applied to work on one of the public works projects and was denied that opportunity as a result of the Port Authority's failure to provide on-the-job training. Explained differently, neither Plaintiff alleges that he suffered a "concrete and particularized and actual or imminent" injury as a result of the unidentified quota program that the Port Authority currently uses to fulfill its equal employment obligations under federal grants. *See Lujan*, 504 U.S at 560. To the contrary, Plaintiffs' allegations are classically "conjectural or hypothetical," in that they appear to state that both named Plaintiffs would have benefited from the Solution. *See id.* Plaintiffs allege that Benjamin leads the ABBA Leadership Center, a not-for-profit organization that holds workshops to connect disadvantaged men and women to jobs that would provide on-the-job training, and that if Benjamin had been offered a program like the Solution, he would have been more marketable upon his reentry into society.[6] (Am. Compl. ¶¶ 6–7.) As to Evans, Plaintiffs' allege only that he "was able to lift himself to become [part of] the skilled construction trades" and "is not able to attempt to rectify the plight of the Class." (*Id.* ¶ 10.) That Plaintiffs would have benefited once from the Solution does not give them standing now to challenge the Port Authority's failure to adopt the Solution.

---

[6] Because Plaintiffs do not argue that they have organizational or third-party standing, the Court will not analyze whether Plaintiffs have met the requirements of either of those alternative bases for standing.

11

Plaintiffs need not allege that that they would have obtained employment but for the Port Authority's refusal to adopt the Solution or provide some form of on-the-job training, but they must allege that some *specific* barrier "prevented [them] from competing on an equal footing." *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666–67 (1993). The Supreme Court has made clear that "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, . . . [t]he 'injury in fact' . . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Jacksonville*, 508 U.S. at 666; *see also Connecticut v. Teal*, 457 U.S. 440, 450 (1982) ("In considering claims of disparate impact . . . this Court has consistently focused on employment and promotion requirements that create a discriminatory bar to *opportunities*."); *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 280 n.14 (1978) (noting that the denial of opportunity to compete for admission to university constitutes sufficient injury-in-fact, even if the plaintiff ultimately would not have been admitted). But Plaintiffs do have to allege that they were at least subject to the alleged quota and goal system they claim the Port Authority uses, (*see* Am. Compl. ¶¶ 18, 20), and that they were "able and ready" to apply for positions. *See Jacksonville*, 508 U.S. at 666 (holding that construction association had standing because, unlike in *Warth*, 422 U.S. at 516, in which a construction association did not allege that "any member had applied for a building permit or a variance with respect to any current project," here the construction association alleged that its members regularly bid on contracts in Jacksonville and would bid on those made unavailable to them by a minority-business set-aside program (alterations omitted)).[7]

---

[7] The Amended Complaint does not articulate the precise conduct, program or policy that Plaintiffs challenge. Plaintiffs variously allege that, instead of "developing less onerous and

Furthermore, even if Plaintiffs are able to allege an injury-in-fact, they must also allege a "causal connection" between the injury they suffered or will imminently suffer and the quota and goal system. *See Lujan*, 504 U.S. at 560–61. Under the facts alleged in the Amended Complaint, Plaintiffs are not able to fulfill this requirement of standing because they have not identified the particular policy or practice that the Port Authority uses or connected that policy to their inability to obtain gainful employment. Instead, Plaintiffs allege that there is a less onerous and "more" constitutional method of providing equal opportunity to the putative class, which addresses only the third prong of standing — redressability "by a favorable decision." *See Lujan*, 504 U.S. at 561.

As currently pled, the Amended Complaint states a generalized grievance — that the minority population of New York City is disparately impacted by undefined quota systems in public works contracting — and attributes it to Defendants' alleged failure to provide on-the-job skills training. Because Plaintiffs have not "clearly . . . allege[d] facts demonstrating that [they] are] the proper part[ies] to invoke judicial resolution of the dispute," the Court finds that they have not met their burden of affirmatively pleading standing.[8] *See Steinberger*, 634 F. App'x at 11. The Court therefore grants Defendant's motion to dismiss for lack of jurisdiction.

---

less offensive alternatives for hiring persons than the disparagement of by color [sic] of their skin or ethnicity . . . [Defendants] instead select employees on an illegal basis of goals and quotas for society's outcasts," (Am. Compl. ¶ 6); then argue that "[t]his action does not challenge percentage goals or other tools instituted by [Defendants] even though racial classifications may be inherently divisive," (Pls. Opp'n 16); and finally, argue that "by relying solely on minority business enterprise percentage goals the government agencies have not complied with the intent of the Civil Rights Act nor the Equal Protection Clause of the [Fourteenth] Amendment," (Pls. Reply 1). It is not clear to the Court whether Plaintiffs in fact challenge any particular policy that Defendants have instituted, and if they do, on what grounds.

[8] The Court finds Plaintiffs' reliance on the decision in *Percy* inapposite and unpersuasive. (*See* Pls. Opp'n 18.) First, *Percy* was decided in 1974, and the Supreme Court has

### c. Plaintiffs lack standing to pursue a preliminary injunction

The Court denies Plaintiffs' motion for a preliminary injunction for the same reason that it grants the Port Authority's motion to dismiss for lack of subject matter jurisdiction: Plaintiffs must "demonstrate standing for each claim and form of relief sought." *See Cacchillo*, 638 F.3d at 404. The deficiencies identified above, which prevent Plaintiffs from maintaining their claims against Port Authority and the other Defendants, are equally applicable in the context of Plaintiffs' motion for a preliminary injunction. *See id.* ("When a preliminary injunction is sought, a plaintiff's burden to demonstrate standing 'will normally be no less than that required on a motion for summary judgment.'" (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 907 n.8 (1990))).

Accordingly, the Court denies Plaintiffs' motion for a preliminary injunction.

---

significantly narrowed and refined standing doctrine since then. *See, e.g., Spokeo v. Robins*, 578 U.S. ---, ---, 136 S. Ct. 1540, 1547–48 (May 16, 2016) (violation of a statutory requirement does not confer Article III standing if there is no injury-in-fact); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (threatened injury must be "certainly impending"); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (elements of standing are an "irreducible constitutional minimum" that must be affirmatively pled). Second, *Percy* concerned the New York Plan, which, as explained *supra* at Note 5, is a specifically identified policy that was alleged to be unconstitutional because it disparately impacted the putative class. Plaintiffs here have not identified the plan akin to the New York Plan in *Percy* that has injured members of the Class and resulted in the alleged disparate impact.

## III. Conclusion

For the foregoing reasons, the Court grants the Port Authority's motion to dismiss for lack of jurisdiction and denies Plaintiffs' cross-motion for a preliminary injunction. The Court dismisses the Amended Complaint as against all Defendants and grants Plaintiffs thirty (30) days to amend the Amended Complaint to allege facts sufficient to demonstrate standing. If Plaintiffs fail to file a second amended complaint, the Court will dismiss the action with prejudice for the reasons discussed above.[9]

SO ORDERED:

    s/ MKB           
MARGO K. BRODIE
United States District Judge

Dated: August 8, 2017
       Brooklyn, New York

---

[9] Although the Court does not address the merits of Plaintiffs' claims because it lacks jurisdiction, it has thoroughly reviewed the Amended Complaint and notes that Plaintiffs fail to allege any intentional discrimination, which is required to plead claims for a denial of equal protection under sections 1981 and 1983. *See Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) ("[A] plaintiff pursuing a claimed violation of [section] 1981 or denial of equal protection under [section] 1983 must show that the discrimination was intentional." (citing *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004))). Plaintiffs also fail to allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," as required to establish a conspiracy claim under section 1985. *Id.* (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Thus, as pled, Plaintiffs have not sufficiently alleged a disparate-impact claim pursuant to sections 1981, 1983 and 1985. *See id.*

15